UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL WALTER RODRIGUEZ,<br><br>Defendant. | Case No.:  17-CR-00215-GPC<br><br>**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE**<br><br>**[ECF Nos. 100, 101, 107]** |

Before the Court is Defendant Michael Walter Rodriguez ("Rodriguez")'s motion for compassionate release. ECF Nos. 100, 101, 107. On August 8, 2025, the Government filed an opposition. ECF No. 113. On September 2, 2025, Rodriguez filed a reply. ECF No. 118. For the reasons set forth below, the Court DENIES Rodriguez's motion for compassionate release.

## BACKGROUND

### I.    Rodriguez's Imprisonment

On July 11, 2017, Rodriguez pled guilty to Count I, Distribution of Methamphetamine in violation of 21 U.S.C. § 841(a)(1), and Count II,  Conspiracy to Launder Monetary Instruments under 18 U.S.C. §§ 1956(a)(1)(A)(i) and (h). ECF Nos. 21 and 41. On November 20, 2017, this Court sentenced Rodriguez to 180 months on

1

Count I and 120 months on Count II to run concurrently, followed by five years of supervised release. ECF No. 41 at 2-3.[1] Rodriguez has been in custody since his arrest on March 16, 2017 and is currently serving his term in BOP custody with a projected release date of December 24, 2028.[2] ECF No. 23 at 2.

Rodriguez is currently 53 years old. ECF No. 23 at 3. His lengthy criminal history began as a juvenile and continues to his most recent offense. *Id.* at 11-18. When Rodriguez was 28 years old, he was introduced to methamphetamine and developed a serious addiction to the substance, smoking an estimated 4 to 7 grams per day. *Id.* at 24. He began experiencing auditory and visual hallucinations in his early thirties and used the substance as self-medication. *Id.* at 23. He has since been diagnosed with schizophrenia, depression, and bipolar disorder. *Id.* at 23-24. Prior to his incarceration, he was prescribed Risperdal, Cymbalta, and Benadryl to minimize his paranoia and hallucinations. *Id.*

Rodriguez has not received consistent treatment for his mental illness in prison. ECF No. 88 at 7 (sealed). In one of his prior motions, Rodriquez reported he waited a year to receive his Risperidone prescription when he was transferred to Federal Correctional Institute Fort Dix ("FCI Fort Dix"). ECF No. 107 at 4. Additionally, in April 2024, Rodriguez was transferred from FCI Fort Dix to Duluth Federal Prison Camp ("Duluth FPC"), and he has not received any medication for his schizophrenia since then. *Id.*

While imprisoned, Rodriguez has completed educational and vocational training courses including Anger Management, Life Skills, Finding a Job, Interview Process, Customer Service, Geography, HIV Education, Suicide Companion Training, Business, Financial Planning, Spanish, Parenting, and Drug Education. ECF No. 107-1 at 1-2. In

---

[1] Page numbers reflect CM/ECF pagination.
[2] Find an Inmate, Federal Bureau of Prisons, https://www.bop.gov/inmateloc (last visited January 23, 2026).

17-CR-00215-GPC

2022, he also earned his GED. ECF No. 83-1 at 6.

## II.    Rodriguez's Previous Motions

On January 20, 2023, while incarcerated at FCI Fort Dix, Rodriguez filed his first motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). ECF No. 71. On September 18, 2023, Rodriguez made a request to the Warden at FCI Fort Dix for a sentencing reduction under § 3582(c)(1)(A). ECF No. 83-4 at 2-3. Then, on October 31, 2023, with the assistance of counsel, Rodriuez requested a reduction in sentence based on the disparity in his sentence due to the Ninth Circuit's later interpretation of safety valve eligibility in *United States v. Lopez*, 998 F.3d 431 (9th Cir. 2021), his mental health, the conditions of his confinement during the COVID-19 pandemic, and his rehabilitation efforts during incarceration. ECF No. 83 at 5-6. It was undisputed that Rodriguez met his administrative exhaustion requirement because he filed the motion thirty days after requesting the Bureau of Prisons ("BOP") file on his behalf. *See* ECF No. 83-4 at 2-3 (letter to warden); ECF No. 89 at 5 (government response). Nonetheless, on March 25, 2024, this Court denied Rodriguez's motion because he failed to demonstrate extraordinary and compelling circumstances under § 3582(c)(1)(A). ECF No. 91.

## III.    Rodriguez's Current Motion

Rodriguez initially filed two pro se motions for compassionate release on November 1, 2024 and December 2, 2024 respectively. ECF Nos. 100, 101. On June 2, 2025, he filed a supplement to his renewed motion with the assistance of counsel. ECF No. 107. Prior to filing, Rodriguez had not filed a new request with his warden for compassionate release. ECF No. 118 at 2-4. Rodriguez asks the Court to reduce his sentence to time served. ECF No. 107 at 8-9. He seeks these modifications pursuant to the "compassionate release" provision of 18 U.S.C. § 3582(c)(1)(A) based on the above-mentioned lack of mental health treatment and his rehabilitation. *See id.* at 5-9.

## LEGAL STANDARD

Generally, a federal court "may not modify a term of imprisonment once it has been imposed," *United States v. Keller*, 2 F.4th 1278, 1281 (9th Cir. 2021) (quoting 18

U.S.C. § 3582(c)), except "in limited circumstances set out by federal statute," *United States v. King*, 24 F.4th 1226, 1228 (9th Cir. 2022). Rodriguez seeks to modify his sentence under the "compassionate release" provision of 18 U.S.C. § 3582(c)(1)(A) as amended by the First Step Act ("FSA"). In relevant part, § 3582(c)(1)(A) permits a court to modify a term of imprisonment:

> the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in § 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction;
> > …
> > and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

Previously, the Ninth Circuit held that policy statement U.S.S.G. § 1B1.13 governed only § 3582(c)(1)(A) motions brought by the Director of the Bureau of Prisons ("BOP"). *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam) (finding the "current version of U.S.S.G. § 1B1.13 is not an 'applicable policy statement' for 18 U.S.C. § 3582(c)(1)(A) motions filed by defendant"). However, amendments to § 1B1.13, effective November 1, 2023, reflect that the policy statement is now applicable to motions filed by defendant and the BOP. *United States v. Garcia Nava*, 2024 WL 221439, at *2 (S.D. Cal. Jan. 19, 2024); *see* U.S.S.G. § 1B1.13(a) ("Upon motion of the Director of Bureau of Prisons *or the defendant*…") (emphasis added). Therefore, policy statement § 1B1.13 is binding on this Court's consideration of Rodriguez's motion for compassionate release.

Under § 1B1.13, as amended, extraordinary and compelling circumstances include: (1) medical conditions of the defendant, whether terminal or chronic, that substantially

17-CR-00215-GPC

diminish the defendant's ability to provide self-care within a correctional facility; (2) age when the defendant is at least 65 years old; (3) family circumstances rendering defendant the only available caretaker for a family member; (4) defendant, while in custody, was a victim of abuse by a BOP employee; (5) other reasons not specifically enumerated that, when considered by themselves or together, are of a similar gravity as those described in (1)-(4); and (6) a change in law that has created a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, but only where the defendant has served at least 10 years of an unusually long sentence.

Lastly, § 1B1.13(a)(2) instructs that prior to granting a motion for compassionate release, a court must determine that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

## DISCUSSION

The Court must first determine whether Rodriguez has satisfied the administrative exhaustion requirement set forth in § 3582(c)(1)(A). If he has, the Court must next decide whether Rodriguez has established "extraordinary and compelling" reasons consistent with the policy statement to justify a reduction of his sentence. Lastly, the Court must determine whether the requested modification would be consistent with the factors set forth in § 3553(a) and whether Rodriguez is a danger to others or the community.

### I.    Exhaustion Requirement

The Government argues that Rodriguez failed to exhaust his administrative remedies because he did not submit a new request to the warden at his new facility in Duluth FPC. ECF No. 113 at 7-8. The Government maintains that no legal doctrine permits Rodriguez to use his prior request from FCI Fort Dix as the basis for the motion of his current confinement at a different facility. *Id*.

In turn, Rodriguez argues his request at FCI Fort Dix is sufficient to meet the exhaustion requirements for the current motion because Rodriguez is not required to submit a renewed request if moved between BOP facilities. Thus, this Court's previous finding that he had met the administrative exhaustion requirements on his prior motion is

17-CR-00215-GPC

sufficient. ECF No. 118 at 2-4; *see* ECF No. 91 at 4 n.4.

Section 3582(c)(1)(A) contains a statutory exhaustion requirement, compelling a defendant to fully exhaust all administrative rights to appeal before a defendant may move for compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A). As enumerated, the exhaustion requirement may be satisfied by "the lapse of thirty days from the receipt [of a request for compassionate release] by the warden of the defendant's facility." *Id*. This language "imposes a mandatory claim-processing rule that must be enforced when properly invoked" by the government. *United States v. Keller*, 2 F.4th 1278, 1282 (9th Cir. 2021).

This exhaustion requirement must be completed for each renewed motion for compassionate release based on changed circumstances. *See id*. at 1283 ("Keller asserts that he fully exhausted his administrative remedies for his second motion because 30 days had passed since he lodged his first administrative request with the warden in July 2020. But the July 2020 request served as the predicate for Keller's first motion in the district court, which was denied in September 2020, and could not have initiated the administrative process for his January 2021 motion, which was itself premised on Keller's claim of changed circumstances."). This claim-processing rule "promotes good policy" and "allows the government to 'implement an orderly system for reviewing compassionate-release applications,' rather than one 'that incentivizes line jumping.'" *Id*. at 1282 (quoting *United States v. Alam*, 961 F.3d 831, 834 (6th Cir. 2020)).

Here, Rodriguez failed to meet the exhaustion requirements set forth in § 3582(c)(1)(A). Prior to filing this instant motion on June 2, 2025, Rodriguez had not sent a request for compassionate release to his warden at Duluth FPC. ECF No. 113 at 7. Instead, he relied on his September 18, 2023 request to the warden at FCI Fort Dix as the basis for his compassionate release motion with this Court. *See* ECF No. 107 at 6, n.3. Although it was undisputed that Rodriguez met the exhaustion requirements on his prior motion, the exhaustion requirement is motion specific. Thus, because Rodriguez's prior motion was fully adjudicated and denied by this Court, the administrative request

17-CR-00215-GPC

underlying that motion cannot serve as the predicate for his current motion when it relies on changed circumstances. *See Keller*, 2 F.4th at 1283. Accordingly, Rodriguez failed to initiate the administrative process for his current motion and, thus, failed to meet the exhaustion requirement.

Rodriguez attempts to refute this conclusion, arguing that (1) transfer between facilities does not nullify a defendant's exhaustion requirement and (2) exhaustion can be satisfied using the same facts from a previous motion. ECF No. 118 at 3. However, both arguments are unavailing. Rodriguez's first argument only applies to cases where a defendant sent a letter to the warden at their facility and was subsequently transferred to a new facility after filing their motion for compassionate release with the court. *See United States v. Hamidu*, No. 2:18-CR-00058-6, 2021 WL 2808721, at *2 (S.D. Ohio July 6, 2021) ("[D]istrict courts have also found the First Step Act's statutory exhaustion requirement to be satisfied where an individual submits a request for compassionate release, is transferred to a new facility, and then does not file a subsequent request at the new facility."); *United States v. Doan*, No. 14-CR-225-MMA-4, 2021 WL 4819317, at *2 (S.D. Cal. Oct. 15, 2021); *United States v. Porter*, No. CR 18-68, 2021 WL 5989142, at *2 (W.D. Pa. Dec. 17, 2021). In those circumstances, a defendant need not send a new letter to the warden at their new facility to meet the exhaustion requirement. Here, Rodriquez sent his letter in support of his original motion to the warden at FCI Fort Dix, filed a motion for compassionate release, was transferred to Duluth FCI, and then had the original motion denied. Afterwards, he filed his renewed motion for compassionate release without sending a new letter. While Rodriguez's cited cases allow him to meet the exhaustion requirement for his original motion, they are not sufficient for his renewed motion.

In terms of the second argument, the cases Rodriquez cites only involve situations where the government did not oppose the exhaustion requirement being met. *See* Unopposed Renewed Motion, *United States v. Lehn*, No. 22-CR-1538-DMS (S.D. Cal. Dec. 20, 2024) (granting unopposed renewed motion considering that the parties' agreed

17-CR-00215-GPC

to exhaustion being met and defendant's cancer diagnosis); *see also United States v. Lopez-Ontiveros*, No. 15-CR-575-GPC-1, 2025 WL 1115052, at *2 n. 3 (S.D. Cal. Apr. 15, 2025) (finding the exhaustion requirement met when it was undisputed); *United States v. Santiago*, No. 4:17-CR-17, 2025 WL 842807, at *1 (E.D. Va. Mar. 18, 2025). While the "claim-processing rule may be 'mandatory' in the sense that a court must enforce the rule if a party 'properly raise[s] it,' … the objection 'may be forfeited'" if not timely asserted. *United States v. Keller*, 2 F.4th 1278, 1282 (9th Cir. 2021) (quoting *Fort Bend County, Texas v. Davis*, 587 U.S. 541, 542 (2019)). Here, unlike the cases cited in Defendant's motion, the government properly raised its opposition that Rodriguez failed to meet the exhaustion requirement. ECF No. 113 at 6-8.

Accordingly, in light of the statutory language of § 3582(c), the Court finds Rodriguez failed to exhaust his administrative remedies.

## II. Request for Stay of Proceedings

In the alternative, Rodriguez asks for the Court to stay proceedings for thirty days, based on a renewed letter for compassionate release sent to the warden at Duluth FPC as of September 2, 2025. ECF No. 118 at 7. Rodriguez argues that granting stay would not unduly prejudice the parties because both parties have fully briefed the merits of the case. *Id.*

Federal district courts possess inherent authority to stay proceedings as part of its case management powers. *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). "How this can best be done calls for the exercise of judgement, which must weigh competing interests and maintain an even balance." *Id.* at 254-55.

Here, granting a stay of proceedings because of the renewed letter would be contrary to the statutory text and policy goals behind § 3582(c). The claim-processing rules of § 3582(c) "allow the executive branch to carefully evaluate a claim in the first instance and possibly obviate the need for litigation *before* it begins." *Keller*, 2 F.4th at 1283 (quoting *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011)) (emphasis in original); *see also United States v. Franco*, 973 F.3d 465, 468 (5th Cir.

8

17-CR-00215-GPC

2020) ("Congress used clear language: all requests for compassionate release must be presented to the [BOP] before they are litigated in the federal courts."). Although Rodriguez technically initiated the administrative process by filing a new request with the warden at Duluth FPC, this request cannot serve as the basis for his current motion. To comply with § 3582(c)(1)(A)'s requirements, Rodriguez must "exhaust his administrative remedies with the BOP *before* seeking relief in the district court." *Keller*, 2 F.4th at 1281 (emphasis in original). However, in commencing the administrative process with his September 2025 request, Rodriguez has now sought relief in district court before exhausting any administrative remedies.[3] Thus, even if the current proceedings were stayed, the government still has a valid objection that Rodriguez did not comply with the statute's requirements.

Accordingly, the Court DENIES Rodriguez's request for stay of proceedings.[4]

## CONCLUSION

For the reasons set forth above, the Court DENIES Rodriguez's motion for compassionate release under 18 U.S.C. § 3582(c).

**IT IS SO ORDERED.**

Dated:  February 23, 2026

Hon. Gonzalo P. Curiel
United States District Judge

---

[3] Rodriguez's conduct in filing a new administrative request also undermines the argument that his September 18, 2023 request should serve as the predicate for his current motion. *See Keller*, 2 F.4th at 1283.

[4] Should Rodriguez fully exhaust his administrative remedies pursuant to § 3582(c), the Court invites him to file a renewed motion.